## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TERRICK L. THOMPKINS,
        Petitioner,

                                        No. 2:21-cv-0005 KWR/DLM

DWAYNE SANTISTEVAN, *et al.*,
        Respondents.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

THIS MATTER is before the Court on Petitioner Terrick L. Thompkins's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. (Doc. 1.) Respondents filed a limited answer addressing exhaustion. (Doc. 14.) Thompkins filed a motion for a stay and abeyance. (Doc. 16.) Having considered the record and the relevant law, the Court concludes that Thompkins has filed a mixed petition containing both exhausted and unexhausted claims. I recommend the Court give Thompkins 21 days to voluntarily dismiss the unexhausted claims. If he fails to do so, I recommend dismissing without prejudice his entire petition.

### I.    Factual and Procedural Background

On May 25, 2018, a jury in the Twelfth Judicial District for the State of New Mexico found Thompkins guilty on eight counts: Counts 1–2: first-degree murder; Count 3: child abuse resulting in great bodily harm; Count 4: aggravated burglary; Count 5: shooting at a dwelling causing great bodily harm; and Counts 6–8: child abuse not resulting in death or great bodily harm. (Docs. 14-O–AA.[2]) On July 10, 2018, the state district court sentenced Thompkins to two consecutive terms of life imprisonment plus 46 years. (Doc. 14-CC at 123.)

---

[1] United States District Judge Kea W. Riggs entered an Order of Reference on March 23, 2023, referring this case to the undersigned magistrate judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 20.)

[2] The Court cites to the exhibits' internal pagination..

The Court will briefly summarize the facts underlying the convictions as outlined in the Respondents' Answer. On March 12, 2015, Thompkins unlawfully entered the home of his ex-wife (Jessica), where Jessica, her boyfriend (Phillip), and Jessica's four children (J.D., D.F., G.T., and I.T.) were preparing for bed. (*See* Doc. 14 at 2 (citing Doc. 14-LL at 244).) "Thompkins is the father of G.T. and I.T.[] and had lost custody of them to Jessica one day earlier." (*Id.* (citing Doc. 14-JJ at 191).) "Thompkins pointed his rifle at J.D. before lowering it and moving toward the shared bedroom of G.T. and I.T." (*Id.*) G.T. and I.T. were in their beds, and Jessica was in the bedroom with them. (*See id.*) Thompkins shot and killed Jessica in his children's bedroom. (*See id.* (citing Doc. 14-LL at 244–45).) Thompkins then moved to the master bedroom, where Phillip was trying to barricade the door. (*Id.*) Thompkins fired through the door, shooting and killing Phillip. (*Id.*) J.D., who was in the bedroom with Phillip, "was hit in the chest with shrapnel" that "lodged near his heart and could not be removed because of a blood-clotting disorder." (*Id.* at 2–3 (citing Docs. 14-LL at 245; 14-JJ at 197).) D.F. was in his bedroom throughout the incident and could hear "screaming and banging but stayed put because he feared he would be in trouble if he came out." (*Id.* at 3.)

Thompkins returned to his "home, where he consumed alcohol and made two calls to 911." (*Id.*) Thompkins told the 911 operator that he killed his ex-wife and asked the operator for police to come get him. (*Id.* (citing Doc. 14-GG at 149).) Police arrested Thompkins and interviewed him. (*Id.*) The interview "ended when [Thompkins] became incoherent and mentioned medication." (*Id.*) Thompkins was admitted "to the hospital, where doctors determined that he had a very high glucose level and out-of-control diabetes." (*Id.*) After his release from the hospital, "Thompkins underwent a second interview, during which he told police that after he lost custody of his children, he wanted to kill 'everyone,' though Jessica was his objective." (*Id.* at 3–4.)

Thompkins asserted an insanity defense at trial. (*See id.* at 4 & n.1 (citing Docs. 14-C at 9–10; 14-F at 15–16).) Witnesses who testified at trial included: (1) Thompkins's girlfriend, Linda Chaparro, who testified, *inter alia*, about domestic disputes between Thompkins and Chaparro (*see id.* at 4 (citing Doc. 14-LL at 260)); (2) Dr. Gary Jackson, who reviewed Thompkins's "medical and military records and testified that on the night of the murders, . . . Thompkins was mentally confused; had very high glucose; and was at risk of slipping into a diabetic coma" (*id.* (citing Doc. 14-LL at 252)); (3) Dr. Eric Westfried, who testified in support of Thompkins's insanity defense and discussed Thompkins's diagnoses of post-traumatic stress disorder (PTSD) due to childhood physical and sexual abuse, traumatic brain injury sustained during combat, and "a brain damage-related drop in IQ" (*id.* (citing Doc. 14-LL at 253)); and (4) Dr. Ned Siegel, who contradicted Dr. Westfried's testimony regarding the insanity defense (*id.* at 5 (citing Doc. 14-LL at 254–56)).

"Thompkins moved for a directed verdict on the basis of insanity." (*Id.*) "The state district court denied the motion." (*Id.* (citing Doc. 14-LL at 248).) The jury found Thompkins guilty as charged. (*See id.*)

A.      **Direct Appeal**

On August 28, 2018, Thompkins filed a direct appeal to the New Mexico Supreme Court. (Doc. 14-EE.) Through counsel Gary Mitchell, Thompkins listed 13 issues in the "Statement of Issues":

1.      The Court erred in refusing to strike certain jurors who indicated they could not be fair. . . .

2.      The Court erred in allowing the State to introduce certain prior bad acts evidence. . . .

3.      The Court erred in sustaining the State's objections to certain testimony of [D]efendant's history regarding psychological and medical treatment and the results thereof. . . .

4.      The Court erred when it sustained and prohibited the Defendant's sister from testifying regarding effects of medication on Defendant and how when his medication changed she would watch his children. . . .

5.      The Court erred in allowing the State to make comparisons to other cases and the [D]efendant in closing. . . .

6.      The Court erred in refusing to allow two experts (Drs. Jackson and Westfried) to speak of and testify to [Defendant's] blood alcohol content . . . taken at the hospital after his arrest even though the information was contained in the medical records and both were doctors. . . .

7.      The Court erred in allowing admission of a portion of [Defendant's] juvenile record in evidence. . . .

8.      The Court erred in refusing to give certain instructions on diminished capacity as it related to all counts. . . .

9.      The Court erred in refusing to direct a verdict. . . .

10.     The Court erred in not dismissing the child abuse resulting in death or great bodily harm because the child injured did not suffer death or great bodily harm, but due to the fact the child was a potential hemophiliac, the potential was there, which as a matter of law is not sufficient . . . .

11.     The Court erred in treating child abuse for instructions purposes as a specific intent crime. . . .

12.     The Court erred in refusing the Defense requesting instructions on diminished capacity relating to the child abuse counts . . . .

13.     There was insufficient evidence to overcome the insanity/diminished capacity defense . . . .

(Doc. 14-FF at 131–34.) Thompkins listed only four of these issues—numbers 2, 6, 9, and 12—in

the "list of legal issues" that accompanied his brief-in-chief. (*See* Doc. 14-GG at 137.) In the body

of the brief-in-chief, however, Thompkins included argument that touched on issue 13. (*Id.* at 174–

78.) He also added a new issue: that the state court erred by not dismissing one of the child abuse

counts, as the child at issue (D.T.) "never was injured, did not come out of his room during the

homicides, [and] did not see [the] shootings . . . ." (*Id.* at 178–79.)

On April 6, 2020, the New Mexico Supreme Court affirmed the judgment and sentence. (*See* Doc. 14-LL.) The New Mexico Supreme Court issued its mandate on April 27, 2020. (Doc. 14-MM.)

### B.    State Habeas Petition

On July 14, 2020, Thompkins filed a pro se petition for writ of habeas corpus in the state district court. (Doc. 14-NN.) The state district court construed the petition as bringing four grounds for relief. (*See* Doc. 14-PP at 327.)

> 1[.]    the trial court improperly admitted bad acts[, including juvenile offenses,] at trial;
>
> 2[.]    the trial court improperly prohibited the introduction of evidence supporting [Thompkins's] theory of defense or mental impairment;
>
> 3[.]    [Thompkins's] trial counsel failed to request appropriate jury instructions in support of the defense[;] and
>
> 4[.]    [Thompkins's] trial counsel failed to exclude an involuntary statement . . . Thompkins made while [he was] under the influence of alcohol and mental health medications.

(Doc. 14-PP at 327; *see also* Doc. 14-NN at 280–82.)

In the "Facts" section underlying the requested relief, Thompkins also alleged that:

> [5.]    the court abused its discretion in not allowing relevant material evidence from experts and [his] sister[; and]
>
> [6.]    [the court erred by allowing the] state to "vouch/bolster" its evidence by improper admission of "other case comparisons."

(Doc. 280-NN at 282.) Finally, Thompkins attempted to "re-raise and incorporate" all issues he brought on direct appeal. (*See id.* at 275 ("Additionally all direct appeal issues should be re-raised incorporated herein for questions of constitutionality in courts denials of those grounds.").)

The state district court, outlining the first four grounds as noted above, entered a Summary Dismissal on September 3, 2020. (Doc. 14-PP.) The court explained that Thompkins's "first three arguments were raised and addressed by the New Mexico Supreme Court during [the] direct appeal." (*Id.* at 327.) "[A] defendant may not seek post-conviction relief for issues raised on appeal that were decided on the merits against the defendant." (*Id.* (quoting *New Mexico v. Gomez*, 815 P.2d 166, 167 (N.M. Ct. App. 1991)).) The court dismissed Thompkins's ineffective assistance of counsel claim on the basis that it "is wholly speculative and the allegations are vague and unsupported." (*Id.* at 328.)

On October 5, 2020, Thompkins petitioned the New Mexico Supreme Court for a writ of certiorari. (Doc. 14-QQ.) He presented four questions for review.

1.    Counsel Gary Mitchell refusing to strike [Thompkins's] involuntary statement . . . [made] while under the influence of alcohol and mental health medication.

2.    Prior bad acts of petitioner, including juvenile offenses . . . .

3.    Court abused its discretion in prohibiting evidence supporting [Thompkins's] defense of mental impairment, mens rea.

4.    Petitioner's trial counsel failed to request appropriate jury instructions in support of the defense.

(Doc. 14-QQ at 329–30.) In a one-page order entered on October 14, 2020, the state supreme court denied the petition. (Doc. 14-RR.)

**C.    Thompkins's § 2254 Claims**

Thompkins filed his Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody on January 4, 2021. (Doc. 1.) He brings the following claims:

1.    The Court erred in refusing to strike certain jurors who indicated they could not be fair. . . .

6

2.      The Court erred in allowing the State to introduce certain prior bad acts evidence. . . .

3.      The Court erred in sustaining the State's objections to certain testimony of Defendant's history regarding psychological and medical treatment. . . .

4.      The Court erred when it sustained and prohibited the Defendant's sister from testifying regarding effects of medication on Defendant and how when his medication changed she would watch his children. . . .

5.      The Court erred in allowing the State to make comparisons to other cases and the [D]efendant in closing. . . .

6.      The Court erred in refusing to allow two experts (Drs. Jackson and Westfried) to speak of and testify to the blood alcohol content of [Defendant] taken at the hospital after his arrest even though the information was contained in the medical records and both were doctors. . . .

7.      The Court erred in allowing admission of a portion of [Defendant's] juvenile record in evidence. . . .

8.      The Court erred in refusing to give certain instructions on diminished capacity as it related to all counts. . . .

9.      [The] Court erred in refusing to direct a verdict . . . .

10.     [The] Court erred in not dismissing the child abuse resulting in death or great bodily harm . . . [because the] child was in a room, never came out, was not injured, [and] did not see any shooting . . . .

11.     [The] Court erred in treating child abuse for instructions purposes as a specific intent crime. . . .

12.     [The] Court erred in refusing the Defense requesting instructions 3, 6, 7 and 8 . . . .

13.     Insufficient evidence to overcome the insanity/diminished capacity defense . . . .

14.     Ineffective assistance of counsel by attorney Gary C. Mitchell[:]

        a.      Counsel refused to strike involuntary statements [Thompkins made] while he was under the influence . . . [;]

        b.      Counsel failed to get [Thompkins's] medical records from the

Veteran Administration[(VA);]

    c.      Counsel . . . raise[d only] five [of the 13] issues in the briefs[;]

    d.      Counsel failed [Thompkins] in so many obvious ways . . . .

(Doc. 1 at 6, 9–10, 12, 14–23.)[3]

Respondents filed a limited answer on November 14, 2022, arguing Thompkins has filed a mixed petition containing both exhausted and unexhausted claims. (*See* Doc. 14.) Respondents ask the "Court to instruct Mr. Thompkins to delete his unexhausted, unbarred claims in order to proceed with those as to which state-court remedies have been exhausted." (*Id.* at 1.)

## II.    Legal Standards Regarding Exhaustion and Default

### A.    Exhaustion of State Court Remedies

"A state prisoner generally may not raise a claim for federal habeas corpus relief unless he 'has exhausted the remedies available in the courts of the State.'" *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011) (quoting 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires that a state prisoner pursue his claims "through 'one complete round of the State's established appellate review process,' giving the state courts a 'full and fair opportunity' to correct alleged constitutional errors." *Id.* (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). In other words, "a state prisoner seeking federal habeas relief generally must have first submitted each of his claims to the State's highest court." *Jernigan v. Jaramillo*, 436 F. App'x 852, 855 (10th Cir. 2011) (citing *O'Sullivan*, 526 U.S. at 845; 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice*

---

[3] Of the 14 claims Thompkins asserts, the first 13 are *almost* identical to those listed in the Statement of Issues his attorney filed prior to filing the brief-in-chief on direct appeal. (*Compare* Doc. 1 at 6, 9–10, 12, 14–23, *with* Doc. 14-FF.) The exception is claim 10, which, instead of matching claim 10 in the Statement of Issues, instead matches the claim raised in the brief-in-chief that was *not* included in the Statement of Issues. (*Compare* Doc. 1 at 19, *with* Doc. 14-GG at 178–79.)

*and Procedure* § 23.3 [b], at 1205–06 (6th ed. 2011) ("[T]he petitioner satisfies her exhaustion burden by raising a claim at all stages of the state's appellate review process (including discretionary state appeals).")).

Federal courts normally will not consider unexhausted claims "unless exhaustion would have been futile because either 'there is an absence of available State corrective process' or 'circumstances exist that render such process ineffective to protect the rights of the applicant.'" *Selsor*, 644 F.3d at 1026 (quoting 28 U.S.C. §§ 2254(b)(1)(B)(i), (ii)). "The state prisoner bears the burden of proving that he exhausted state court remedies[] or that exhaustion would have been futile." *Id.* (citations omitted).

### B.    Procedural Default

The doctrine of procedural default, an important corollary to the exhaustion requirement, "prevents a federal court from reviewing 'the merits of a claim—including constitutional claims—that a state court declined to hear because the prisoner failed to abide by a state procedural rule.'" *Williams v. Trammell*, 782 F.3d 1184, 1212 (10th Cir. 2015) (quoting *Martinez v. Ryan*, 566 U.S. 1, 9 (2012)); *see also Power v. Santistevan*, No. CV 19-1055 KWR/SCY, 2023 WL 3230522, at *4 (D.N.M. May 3, 2023), *R&R adopted*, 2023 WL 4248175 (D.N.M. June 29, 2023). "The state procedural rule at issue must be 'adequate and independent.'" *Casaus v. Hatch*, No. CV 20-1269 WJ/KK, 2023 WL 6805727, at *3 (D.N.M. Oct. 16, 2023) (quoting *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011)). "A state procedural rule is independent if it relies on state law, rather than federal law, and is adequate if it is firmly established and regularly followed." *Id.* (quoting *Fontenot v. Crow*, 4 F.4th 982, 1028 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 2777 (2022)) (quotation marks omitted).

### C.      Anticipatory Procedural Bar

"Anticipatory procedural bar occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." *Anderson v. Sirmons*, 476 F.3d 1131, 1140 n.7 (10th Cir. 2007) (quotation marks and citation omitted).

### D.      Mixed Petitions

"Generally, a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies." *Grant v. Royal*, 886 F.3d 874, 891–92 (10th Cir. 2018) (quotation marks and citations omitted). Where a petitioner brings a "mixed petition" containing both exhausted and unexhausted claims, the court may:

> (1) dismiss the mixed petition in its entirety; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit.

*Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (quotation and internal citations omitted).

## III.    Analysis

Respondents contend, and I agree, that Thompkins brings a mixed petition. As discussed below, I recommend finding that Thompkins exhausted Claims 2, 4–7, and 9–10, and 12–14(a) and failed to exhaust Claims 1, 3, 8, and 14(b)–(d).

### A.      Claims 2, 4–7, and 9–10, and 12–14(a) are exhausted.

Respondents concede that Thompkins exhausted his available state-court remedies as to Claims 2, 6, 9, 10, 12, and 13, which he raised to the New Mexico Supreme Court on direct appeal.

(*See* Doc. 14 at 15.) The Court agrees that Thompkins argued these claims in his brief-in-chief.[4] (*See* Doc. 14-GG.)

Respondents further concede that Thompkins exhausted his available state-court remedies as to Claims 4, 5, 7, and 14(a), which he raised in his state habeas and certiorari petitions. (*See* Doc. 14 at 15.) The Court agrees that Thompkins exhausted these claims. (*See* Docs. 14-NN at 280–82; 14-QQ at 329–32.)

### B.    Claims 1, 3, 8, 11, and 14(b)–(d) are not exhausted.

Respondents contend that Claims 1, 3, 8, and 11 are unexhausted and procedurally defaulted, as Thompkins failed to include them in either his brief-in-chief or in his state habeas and certiorari petitions.[5] (*See* Doc. 14 at 14.) Although they fail to elaborate on their argument, Respondents conclude that Claims 1, 3, 8, and 11 are procedurally defaulted because "New Mexico courts have consistently applied the rule that deems all issues abandoned that are not raised in an appellant's brief-in-chief . . . ." (*Id.* (quoting *Maes v. Thomas*, 46 F.3d 979, 986 (10th Cir. 1995)).) Presumably, Respondents refer to the differences between Thompkins's Statement of Issues, containing 13 grounds for relief, and his brief-in-chief, listing only five grounds. (*See* Docs. 14-FF at 131–34; 14-GG at 137.) To establish procedural default, however, there must be a state decision that actually "enforce[s] the default." *See Powells v. Bravo*, Civ. No. 05-0782 JB/CEG, 2007 WL 9734212, at *2 (D.N.M. Mar. 5, 2007). Respondents do not cite a state court opinion

---

[4] Claims 9 and 13 touch on the same issue. (*See* Docs. 1 at 18, 22; 14-GG at 154–66.)

[5] To the extent Thompkins argues that he presented these claims in the state habeas petition when he cursorily asserted that "all direct appeal issues should be re-raised incorporated herein[,]" the Court disagrees. (*See, e.g.*, Doc. 1 at 6 (citing Doc. 14-NN at 275).) This one-sentence statement does not constitute a "full and fair" presentation of his claims. To fairly present claims, "[t]he prisoner's allegations and supporting evidence must offer the state courts a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Demarest v. Price*, 130 F.3d 922, 932 (10th Cir. 1997) (quotation marks and citation omitted).

that finds Thompkins procedurally defaulted these claims. (*See* Doc. 14.) In its decision affirming Thompkins's judgment and sentence on direct appeal, the New Mexico Supreme Court did not comment on the claims raised but not argued from the Statement of Issues. (*See* Doc. 14-LL.) The same is true of the state court opinions dismissing the state habeas petition (*see* Doc. 14-PP) and denying the petition for writ of certiorari (*see* Doc. 14-RR). Thus, it does not appear that any state court applied the rule Respondents rely on regarding the abandonment of issues not argued in the brief-in-chief. (*See* Doc. 14 at 14.) "Procedural default principles simply do not apply where, as here, there is not a state decision that 'clearly and expressly' relied on a procedural default." *See Powells*, 2007 WL 9734212, at *2 (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)) (subsequent citations omitted).

Respondents point out that Thompkins raises Claims 14(b)–(d) for the first time in this petition. (*See* Doc. 14 at 15.) The Court agrees that these claims, which are not included in any state filing, are unexhausted. Respondents briefly mention anticipatory procedural bar, noting that there are "restrictions on filing second or successive habeas petitions in New Mexico . . . ." (*See* Doc. 14 at 13, 15.) Yet state courts have discretion to consider second habeas petitions. *See* Rule 5-802(I) NMRA; *see also, e.g.*, *Power*, 2023 WL 3230522, at *8 (declining to apply anticipatory procedural bar because state courts do not automatically bar second habeas petitions).

I recommend finding that Claims 1, 3, 8, 11, and 14(b)–(d) are neither procedurally defaulted nor subject to an anticipatory procedural bar.

### C.   Mixed Petition

I recommend finding that Thompkins a mixed petition. Again, the Court may:

(1) dismiss the mixed petition in its entirety; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the

> exhausted claims; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit . . . .

*Fairchild*, 579 F.3d at 1156 (quotation and internal citations omitted). Respondents ask the Court to direct Thompkins to delete his unexhausted claims and proceed only with the exhausted claims. (*See* Doc. 14 at 16.) Thompkins moves the Court to stay this matter so that he may exhaust the unexhausted claims and add yet another claim. (*See* Doc. 16.)

The Court recommends denying the motion to stay. "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). Here, Thompkins seeks an order of stay and abeyance to exhaust the unexhausted claims and to "raise [the] additional issue of [a] *Brady* claim . . . ." (Doc. 16 at 1.) Thompkins asserts that he "was prejudiced by the State[] and denied mental health evaluation and expert testimony from the [VA] when the State denied a transport order from Otero County Jail to the El Paso VA dated 02-03-2016." (*Id.*) Thompkins offers no reason, much less good cause, for his failure to exhaust this claim in his first state habeas petition, which post-dated the transport at issue. (*See* Doc. 14-NN (dated July 14, 2020).) Because Thompkins fails to show good cause for his failure to exhaust his unexhausted claims—those in his petition and the new one he raises in the motion—the Court recommends denying the motion to stay.

Instead, the Court recommends giving Thompkins "the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to" this Court. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982). Specifically, I recommend allowing Thompkins 21 days to voluntarily dismiss Claims 1, 3, 8, 11, and 14(b)–(d). If Thompkins

13

fails to submit a voluntary dismissal of the claims, I recommend the Court dismiss the entire Petition without prejudice.

Thompkins should take care to "assess the ramifications of" these two options. *See Casaus*, 2023 WL 6805727, at \*6. If he chooses to dismiss Claims 1, 3, 8, 11, and 14(b)–(d) and pursue the remaining exhausted claims only, "'he could lose the opportunity to litigate his presently unexhausted claims in federal court,' because the unexhausted claims could be characterized as 'second or successive' in a subsequent federal action under Section 2254." *See id.* (quoting *Rose*, 455 U.S. at 514, 521) (citing 28 U.S.C. § 2244(b); *Tapia v. Lemaster*, 172 F.3d 1193, 1194–96 (10th Cir. 1999)). If he opts against dismissing the unexhausted claims and the Court dismisses his entire Petition, he "should consider whether state and/or federal statutes of limitation may bar some or all of his claims (whether exhausted or not) should he try to pursue them in state and/or federal court in the future." *See id.* (citing § 2244(d)(2); *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (the statute of limitations is not tolled during the pendency of a federal habeas petition)).

## IV.   Conclusion

**IT IS HEREBY RECOMMENDED** that the Court set a 21-day deadline for Thompkins to voluntarily dismiss the unexhausted claims (Claims 1, 3, 8, 11, and 14(b)–(d)) so that he may go forward only with the exhausted claims (Claims 2, 4–7, 9–10, and 12–14(a)).

**IT IS FURTHER RECOMMENDED** that, if Thompkins fails to voluntarily dismiss Claims 1, 3, 8, 11, and 14(b)–(d) within the 21-day deadline, the Court dismiss the entire mixed Petition without prejudice.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with**

**the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE